# Exhibit "A"
# (State Court Process and Pleadings)

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE FIFTH JUDICIAL CIRCUIT |
| COUNTY OF RICHLAND | ) | CASE NO. 2020-CP-40-_____ |
| | ) | |
| SULLIVAN MANAGEMENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **SUMMONS** |
| | ) | |
| FIREMAN'S FUND INSURANCE COMPANY, | ) | **(Jury Trial Demanded)** |
| AND ALLIANZ GLOBAL RISKS US | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**TO THE DEFENDANTS ABOVE NAMED:**

YOU ARE HEREBY SUMMONED AND REQUIRED to answer the Complaint in the above-entitled action, a copy of which is herewith served upon you, and to serve a copy of your Answer upon the subscribers at their offices located at 415 Mill Street, Mt. Pleasant, South Carolina 29464, within thirty (30) days after the date of such service, exclusive of the day of service. If you fail to answer the Complaint within the above-described time, judgment by default will be rendered against you for the relief demanded in the Complaint.

*/s/Justin O'Toole Lucey*
Justin O' Toole Lucey
Sohayla R. Townes
JUSTIN O'TOOLE LUCEY, PA
415 Mill Street
Mt. Pleasant, South Carolina 29464
(843) 849-8400
jlucey@lucey-law.com
stownes@lucey-law.com

*Attorneys for Plaintiff*

May 8, 2020
Mount Pleasant, SC

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE FIFTH JUDICIAL CIRCUIT |
| COUNTY OF RICHLAND | ) | CASE NO. 2020-CP-40-_____ |
| | ) | |
| SULLIVAN MANAGEMENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| FIREMAN'S FUND INSURANCE COMPANY, | ) | **(Jury Trial Demanded)** |
| AND ALLIANZ GLOBAL RISKS US | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW Plaintiff Sullivan Management, LLC (hereinafter "Plaintiff" or "Sullivan"), by and through its undersigned counsel and alleges as follows against the Defendants:

1.       This is an insurance breach of contract and bad faith case brought by a Carolina hospitality management group to rectify the wrongful denial of coverage for losses, including business income loss and extra expense loss, resulting from the 2019 Novel Coronavirus at nine Carolina Ale House restaurants and related properties under an "all risks" insurance policy issued by Defendants.

## **PARTIES**

2.       Plaintiff is a limited liability company organized and existing under the laws of the State of North Carolina with its principal place of business at 710 Lady Street, Suite 100, Richland County, Columbia, South Carolina.

3.       Plaintiff manages and oversees the operations of nine (9) Carolina Ale House ("CAH") restaurants and their landlord ownership entities, primarily in South Carolina.

4.       Plaintiff is the first named insured on the insurance policy at issue; the entities that own each of these CAH real estate locations and restaurants are also named insureds on the

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

insurance policy at issue. A copy of the Named Insured Schedule is appended hereto and incorporated by reference.

5.     Defendant Fireman's Fund Insurance Company ("Fireman's Fund") is an insurance company organized and existing under the laws of the State of California with its principal place of business at 225 W. Washington Street, Suite 1800, Chicago, Illinois 60606, that is authorized and doing business in the State of South Carolina.

6.     Defendant Allianz Global Risks US Insurance Company ("Allianz Global Risks") is an insurance company organized and existing under the laws of the State of Illinois with its principal place of business at 225 W. Washington Street, Suite 1800, Chicago, Illinois 60606, that is authorized and doing business in the State of South Carolina.

7.     The insurance companies defined above are hereinafter collectively referred to as "Insurers".

8.     This suit arises out of insurance business purposefully and continuously conducted by the Insurers with Plaintiff in the State of South Carolina.

**JURISDICTION & VENUE**

9.     Venue is proper in this Court because the most substantial part of the acts and/or omissions complained of took place within the venue of this Court. Pursuant to South Carolina Code § 15-7-70 venue is also proper in this Court because Defendants are insurance companies doing business in this State and the losses occurred primarily within South Carolina counties, including in Richland County.

10.     In addition to Plaintiff's breach of contract and bad faith causes of action, Plaintiff alternatively and additionally alleges and seeks declaratory relief pursuant to the South Carolina Code §§ 15-53-10, *et seq.* and South Carolina Rule of Civil Procedure 57. In accordance with

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

South Carolina Code § 15-53-80, all of the parties herein are proper parties to this action in that each has or claims an interest that would be affected by the requested declarations.

11.    This Court has jurisdiction over the Defendants in this action as Fireman's Fund and Allianz Global Risks are (a) transacting business in South Carolina; (b) contracting to insure, person, property or risk located within South Carolina at the time of contracting; and (c) making contracts substantially connected with South Carolina.  In addition, Fireman's Fund and Allianz Global Risks exercise substantial, systematic, and continuous contacts with South Carolina by doing business in South Carolina, serving insureds in South Carolina, and seeking additional business in South Carolina.

12.    This Court has subject matter jurisdiction over the matters alleged in this action.

## FACTUAL BACKGROUND

13.    Insurers entered into a contract of insurance with Plaintiff Sullivan Management, LLC.

14.     Both Insurers are part of the Allianz group of companies; both Insurers' names and logos appear on various portions of the policies and claims material, and the Insurers appear to have jointly issued the subject policy and adjusted the claim addressed herein.

15.    Plaintiff agreed to pay significant premiums in exchange for Insurers' promises to indemnify losses, including, but not limited to, business income and extra expense losses at many locations, including CAH restaurants located in Greenville[1], Columbia[2], Summerville[3],

---

[1] 113 S Main Street, Greenville County, Greenville, SC 29601 and 1115 Woodruff Road, Greenville County, Greenville, SC 29607.
[2] 277 Columbiana Drive, Lexington County, Columbia SC 29212 and 708 Lady Street, Richland County, Columbia, SC 29201.
[3] 191 Sigma Drive, Berkeley County, Summerville, SC 29483.

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

Charleston[4], Myrtle Beach[5], and Fort Mill, South Carolina[6] and in Augusta, Georgia[7]. The scheduled locations on the subject policy are identified on the Named Insured Schedule page and incorporated by reference.

16.     The CAH restaurants are generally open 365 days a year for the majority of the day, evening, and night and generally have the capacity to hold hundreds of guests.

17.     The insured entities, properties, and scheduled locations are covered under policy number ██████8190, which is in place for the December 15, 2019, to December 15, 2020 policy period (the "Policy").

18.     Plaintiff has fulfilled all of its responsibilities under the insurance contract, dutifully paying hundreds of thousands of dollars in premiums to Insurers over the years, promptly reporting claims, and providing all requested information.

19.     Plaintiff paid these premiums on its own behalf and on behalf of each named insured on the Policy.

20.     The Policy has been continuously in full force and effect since inception, providing first-party business income, extra expense, and additional coverages.

21.     Insurers promised under the Policy to pay for

actual loss of **business income** and necessary **extra expense** [that named insureds] sustain due to the necessary **suspension** of [insureds'] **operations** during the **period of restoration** arising from direct physical loss or damage to property at a **location**, or within 1,000 feet of such **location**, caused by or resulting from a **covered cause of loss**.

22.     Under the Policy, the insurance is also extended to apply to, *inter alia*, the actual loss of business income and necessary extra expense sustained when access to the scheduled

---

[4] 145 Calhoun Street, Charleston County, Charleston, SC 29401.
[5] 2915 Hollywood Drive, Horry County, Myrtle Beach, SC 29577.
[6] 1342 Broadcloth Street, York County, Fort Mill, SC 29715.
[7] 203 Robert C Daniel Jr Parkway, Richmond County, Augusta, GA 30909.

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

locations is prohibited by a civil authority as the result of a covered cause of loss to property in the immediate area of Plaintiff's scheduled locations.

23.    The Policy also specifically extends coverage to direct physical loss or damage caused by virus.

24.    The Policy is an all risks policy, insofar as it provides that a covered cause of loss means direct physical loss or damage unless the loss is specifically excluded or limited in the Policy.

25.    The Policy is subject to a Business Income (and Extra Expense) limit of $12,715,000.

26.    Plaintiff, as first named insured under this policy, brings this action on behalf of all named insureds under the Policy.

**(COVID-19 Disease Outbreak)**

27.    A pneumonia of unknown origin was first reported to the World Health Organization ("WHO") on December 31, 2019. China provided the genetic sequence for what has become known as the 2019 Novel Coronavirus (2019-nCoV) on or about January 12, 2020. The WHO recognized on January 25, 2020, that the 2019 Novel Coronavirus is a "global threat to human health…" On January 30, 2020, the Director of the WHO declared the 2019 Novel Coronavirus "outbreak a Public Health Emergency of International Concern." The disease caused by the 2019 Novel Coronavirus was identified as "COVID-19" on February 11, 2020. On March 11, 2020, the WHO characterized COVID-19 as a pandemic. The WHO saw "alarming levels of spread and severity, and by the alarming levels of inaction." WHO representatives stated

> Pandemic is not a word to use lightly or carelessly . . . ***We have never before seen a pandemic sparked by a coronavirus***. This is the first pandemic caused by a coronavirus. And we have never before seen a pandemic that can be controlled, at the same time.

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

(emphasis added). The pandemic spread from China to surrounding countries and then to Italy, Iran, Spain and across the globe.  The Center for Disease Control ("CDC") has stated

> [A] pandemic is a global outbreak of disease. Pandemics happen when a new virus emerges to infect people and can spread between people sustainably. Because there is little to no pre-existing immunity against the new virus, it spreads worldwide.

### (Presidential Proclamations)

28.    On January 31, 2020, President Trump signed the Presidential Proclamation on Suspension of Entry as Immigrants and Nonimmigrants of Persons who Pose a Risk of Transmitting 2019 Novel Coronavirus (the First Proclamation), suspending the entry of all aliens (i.e., non-citizens) who were physically present within the People's Republic of China (excluding the Special Administrative Regions of Hong Kong and Macau) during the 14-day period preceding their attempted entry into the United States.  On February 29, 2020, President Trump signed the Presidential Proclamation on the Suspension of Entry as Immigrants and Nonimmigrants of Certain Additional Persons Who Pose a Risk of Transmitting Coronavirus (the Second Proclamation), suspending the entry of all aliens who were physically present within the Islamic Republic of Iran during the 14-day period preceding their attempted entry into the United States. On March 11, 2020, President Trump signed the Presidential Proclamation on Suspension of Entry as Immigrants and Nonimmigrants of Certain Additional Persons Who Pose a Risk of Transmitting 2019 Novel Coronavirus (the Third Proclamation), resulting in a travel ban and of the entry of all aliens who were physically present in any of the 26 European countries that make up the Schengen Area during the 14-day period preceding their attempted entry into the United States. The Schengen Area included: Austria, Belgium, Czech Republic, Denmark, Estonia, Finland, France, Germany, Greece, Hungary, Iceland, Italy, Latvia, Liechtenstein, Lithuania, Luxembourg, Malta, Netherlands, Norway, Poland, Portugal, Slovakia, Slovenia, Spain, Sweden, and Switzerland.

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

**(Emergency Declarations)**

29.    On March 13, 2020, South Carolina Governor Henry McMaster determined that COVID-19 posed an actual or imminent public health ***emergency for the State of South Carolina*** in Executive Order No. 2020-08, and consequently (a) declared that a State of Emergency exists in South Carolina; (b) directed the South Carolina Department of Health and Environmental Control ("DHEC") to use "every available means to prevent the transmission of infectious disease and to ensure that all cases of infectious disease are subject to proper control and treatment"; and (c) ordered, *inter alia*, the closure of public schools and state-supported colleges and universities in Kershaw and Lancaster counties, the first of many activity and gathering restrictions. In this and subsequent orders, the Governor noted the potential necessity of further proclamations, orders, and directives "to ensure the fullest possible ***protection of*** life and ***property*** during this State of Emergency" (emphasis added).

30.    Also on March 13, 2020, the President of the United States declared that the COVID-19 pandemic in the United States constitutes a national emergency, pursuant to Sections 201 and 301 of the National Emergencies Act, 50 U.S.C. §§ 1601, *et seq.*, and consistent with Section 1135 of the Social Security Act, as amended (42 U.S.C. § 1320b-5), which began on March 1, 2020. The President further declared that the ongoing COVID-19 outbreak is a pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, tribes, territories, and the District of Columbia, pursuant to Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121–5207 ("Stafford Act").

**(Fourth Presidential Proclamation)**

31.    On March 14, 2020, President Trump signed the Proclamation on the Suspension of Entry as Immigrants and Nonimmigrants of Certain Additional Persons Who Pose a Risk of

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

Transmitting Coronavirus (the Fourth Proclamation), further suspending the entry of all aliens who were physically present in the United Kingdom (excluding overseas territories outside of Europe) or the Republic of Ireland during the 14-day period preceding their attempted entry into the United States.

### (South Carolina Gathering Restrictions)

32.    On March 15, 2020, Governor McMaster extended public school closures to all counties in the State of South Carolina and <u>urged</u> that indoor and outdoor <u>public gatherings be cancelled, postponed, or rescheduled</u>, to the extent possible, <u>or limited so as not to exceed one hundred (100) people</u>.  The Order notes that the Governor is authorized to order or direct "any person or group of persons to refrain from doing any act or thing which would, in his opinion, *endanger* life, limb or *property*" while a state of emergency has been declared (emphasis added). *See* SC Executive Order No. 2020-09.

33.    As of March 15, 2020, there were 28 known, positive cases of COVID-19 in the State of South Carolina with an additional seven cases being monitored by DHEC. *See* City of Charleston Emergency Ordinance No. 2020-039(a).

### (National Guidelines)

34.    On March 16, 2020, the President of the United States and the White House Coronavirus Task Force issued new guidance, titled "The President's Coronavirus Guidelines for America: 15 Days to Slow the Spread of Coronavirus (COVID-19)", to help protect Americans during the global COVID-19 outbreak.  The President's Guidelines recommended, *inter alia*, that the American people "<u>[a]void</u> social <u>gatherings</u> in groups of <u>more than 10 people</u>" and "<u>[a]void eating or drinking at bars, restaurants</u>, and food courts—use drive-thru,     pickup,    or    delivery options" (emphasis added).

8

**(State and Local Mandates)**

35.     On March 16, 2020, the City of Charleston, South Carolina *required that bars, restaurants*, and public indoor establishments *not permit gatherings of 50 or more people* at their locations, under Emergency Ordinance No. 2020-039.

36.     On March 17, 2020, Governor McMaster issued Executive Order No. 2020-10, *barring on-premises or dine-in consumption services at South Carolina restaurants* and food-service establishments that prepare, produce, or sell food or beverages of any kind.  The Order further *prohibited* any organized events or *public gatherings of fifty (50) or more people* in a single room, area, or other confined indoor or outdoor space (emphasis added).[8]

37.     On March 19, 2020, the City of Charleston issued Emergency Ordinance No. 2020-039(a), *ordering* "*bars and restaurants* which prepare, produce, or otherwise offer or sell food or beverages of any kind for on-premises consumption in the City" *to* "*suspend services for on-premises or dine-in consumption*, either indoors and outdoors" effective immediately (emphasis added).   In addition, the Ordinance *ordered all public gatherings not to exceed 10 people*, except for medical facilities, pharmacies, grocery stores, and City government day to day operations. Violation of the Ordinance carried a fine of up to $500, 30 days in jail or both.

38.     As of March 19, 2020, there were 60 known, positive cases of COVID-19 in South Carolina. *See* City of Charleston Emergency Ordinance No. 2020-039(a).

39.     On March 21, 2020, the Mayor of Augusta, Georgia *prohibited gatherings of more than 10 people* in the City and *ordered restaurants* and businesses with on-premises consumption

---

[8] The lone CAH location in Augusta, Georgia, was subject to the same dine-in service mandate issued by the Augusta Mayor Hardie Davis on the previous day.  *See* Executive Order No. 2020-003.

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

of alcoholic beverages ***to close their on-premises operations***, amid a number of other closures. Executive Order No. 2020-05.

40.     On March 23, 2020, Governor McMaster authorized law enforcement officers to disperse any group of 3 or more people that could pose a public health threat. *See* SC Executive Order No. 2020-13.  On the same date, the City of Columbia issued Ordinance No. 2020-034, ***closing dine in services and on premises consumption*** of food and beverages ***of restaurants and bars***, ***prohibiting gatherings of 10 or more people,*** and ***requiring individuals to stay at home*** except for those working at or conducting business that was deemed "essential". City of Columbia Emergency Ordinance No. 2020-034.

### (Continued Spread)

41.     As of March 23, 2020, the total number of cases in the United States was well over 46,000 cases with at least 298 cases in the State of South Carolina, 31 cases in Charleston County with one death, 45 cases in Richland County, and 19 cases in Lexington County with one death. *See* City of Charleston Emergency Ordinance on Stay at Home No. 2020-042; City of Columbia Emergency Ordinance No. 2020-034.

42.     COVID-19 was aggressively spreading across the State of South Carolina with DHEC confirming the localized person-to-person spread of COVID-19 in the State as of March 24, 2020. *See id*.

43.     On March 24, 2020, the World Health Organization indicated that the United States had the potential to become the center of the COVID-19 pandemic.  Also, on March 24, 2020, the City of Charleston ordered individuals to shelter at their residence.  Only essential businesses were allowed to continue to operate.  The Ordinance stated that "[p]ursuant to CDC guidelines, ***social gatherings of 10 or more people***, for any reason other than working at or receiving essential

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

services, is *prohibited*" and that "*dine in or on premises consumption of food or beverages* whether indoors or outdoors," *at bars and restaurants* is *prohibited* (emphasis added).  City of Charleston Emergency Ordinance on Stay at Home, No. 2020-042.

**(Major Disaster Declared)**

44.     On March 24, 2020, Governor McMaster requested that the President of the United States declare that a major disaster exists in the State of South Carolina pursuant to Section 401 of the Stafford Act.

45.     Three days later, the President of the United States granted Governor McMaster's aforementioned request and declared that a major disaster exists in the State of South Carolina and ordered federal assistance to supplement state, tribal, and local recovery efforts in the areas affected by the COVID-19 pandemic, with an effective date retroactive to January 20, 2020, and continuing.[9]

**(Extended and Expanded Directives)**

46.     On March 28, 2020, Governor McMaster declared that "a *separate and distinct emergency exists in part due to the actual and ongoing impacts* associated" with "the evolving nature and scope of the public health threat or other risks posed by COVID-19".  The Order acknowledged that *COVID-19 involves an "actual and widespread 'occurrence'*. . .with confirmed cases of COVID-19 in over eighty-five percent (85%) of South Carolina's forty-six (46) counties" (emphasis added). *See* SC Executive Order No. 2020-15.  The next day, the President of the United States expanded and extended the provisions of his Coronavirus Guidelines for America based on the ongoing nature and evolving scope of the global COVID-19 pandemic.

---

[9] As of April 11, 2020, all 50 states as well as the U.S. Virgin Islands, the Northern Mariana Islands, Washington, D.C., Guam and Puerto Rico have received a federal disaster declaration as a result of the pandemic. American Samoa is the only U.S. territory that is not under a major disaster declaration.

47.    As of March 31, 2020, the total number of cases in the United States was well over 189,500 cases with at least 1,083 cases in the State of South Carolina and 142 cases in Charleston County with one death. *See* City of Charleston Ordinance No. 2020-048.

48.    On March 31, 2020, Governor McMaster ordered the ***closure of businesses, venues, facilities, services, and activities deemed "non-essential"***, including spectator sports, among entire categories of gathering spaces and athletic and recreational activities. *See* SC Executive Order No. 2020-17.  One day later, the City of Charleston followed suit, expressly acknowledging Governor McMaster's Executive Order and expanding the restrictions to include ***a prohibition on social gatherings of 10 or more people*** for any reason other than providing or receiving essential services. The Ordinance further noted that on premises consumption of food or beverages at bars and restaurants shall be prohibited.  *See* City of Charleston Ordinance No. 2020-048.

49.    On April 3, 2020, Governor McMaster barred short-term and vacation rental establishments from accepting new reservations for individuals residing in or travelling from any country, state, municipality, or other geographic area subject to or identified in a CDC travel advisory or other CDC notice as a location with extensive community transmission of COVID-19, to include the Tri-State Area (consisting of the States of New York, New Jersey, and Connecticut). *See* SC Executive Order No. 2020-19.

50.    On April 6, 2020, Governor McMaster instituted a ***statewide stay-at-home order***.[10] It states, *inter alia*, that:

> [I]t is axiomatic that the health, welfare, and ***safety of the*** lives and ***property*** of the people are beyond questions matters of public concern;
>
> …..

---

[10] South Carolina's three largest cities — Charleston, Columbia, and Greenville — had previously issued stay-at-home orders.  *See* City of Columbia Ordinance No. 2020-034; City of Charleston Ordinance No. 2020-048; City of Greenville Ordinance No. 2020-036.

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

[A]s of April 6, 2020, public health officials have reported <u>over 2,000 cases</u> of COVID-19 in the State of South Carolina;

…..

B. I [Governor McMaster] hereby order and direct that….any and all ***residents and visitors*** of the State of South Carolina <u>are required to limit social interaction</u>, <u>practice social distancing</u> in accordance with CDC guidance, and <u>take every possible precaution to avoid potential exposure</u> to, and to slow the spread of, COVID-19, and ***shall limit*** their ***movements outside of their home, place of residence, or current place of abode*** (collectively, Residence), except as allowed by this Order, for purposes of engaging in Essential Business, Essential Activities, or Critical Infrastructure Operations, as set forth below and as such terms are further defined herein.

…..

L. … [T]he foregoing definitions do not repeal, by implication or otherwise, the terms and provisions of Executive Order No. 2020-10, as extended by Executive Order No. 2020-15, which directed, *inter alia*, that ***any and all restaurants*** or other food-service establishments (collectively, Restaurants), as defined and set forth therein, that prepare, produce, or otherwise offer or sell food or beverages of any kind for on-premises consumption in the State of South Carolina, ***shall suspend services for, and may not permit, on-premises or dine-in consumption***.

SC Executive Order No. 2020-21 (internal citations omitted) (emphasis added).  Six days later, Governor McMaster instituted South Carolina's third State of Emergency, noting that COVID-19 cases have been identified and reported in each of South Carolina's forty-six (46) counties. *See* SC Executive Order No. 2020-23.

51.    On Monday, April 20, 2020, Governor McMaster allowed certain non-essential businesses to operate provided they limit their occupancy to 5 customers per 1,000 square feet or 20% of posted occupancy limits, whichever number is lower.  However, South Carolina restaurants and bars remained barred from permitting any kind of on-premises consumption of food or beverages.  *See* SC Executive Order No. 2020-28.

52.    On April 29, 2020, Governor McMaster's orders barring restaurants and bars from providing dine-in or on-premises services and forbidding restaurants and bars from permitting any

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

food or beverage consumption at their locations remained in full force and effect.  *See* SC Executive Order No. 2020-29.

53.    As of May 8, 2020, there are approximately 1.2 million (1,200,000) confirmed cases of COVID-19 in the United States and 70,000 deaths.  While South Carolina has 7,142 confirmed cases with 316 deaths, the actual number of total cases in South Carolina is estimated at 49,181.

54.    As a direct and proximate result of the foregoing events, Plaintiff and each named insured, has incurred, and continues to incur a substantial loss of business income and additional expenses, and other damages covered under the Policy.

55.    As a further direct and proximate result, Plaintiff has been forced to furlough hundreds of employees.

56.    The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real and direct physical loss and damage.

57.    China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

58.    Reports by the CDC indicate that the COVID-19 strains physically infect and can stay alive on surfaces for at least 17 days, a characteristic that renders property exposed to the contagion unsafe and dangerous.  Other research indicates that the deadly virus physically infects and stays on surfaces of objects or materials, "fomities", for up to twenty-eight days.

59.    Recirculated air in restaurants has been documented to exacerbate spread, from an asymptomatic diner to others seated throughout the restaurant, over the course of just over one hour, by one or more nationally recognized health experts in the United States, based in part upon an investigation into the original Chinese propagation of the virus.

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

60.    Additional research has documented that the prevalence of contaminating surfaces and resulting illnesses began before anyone ever knew it, preceding the first known cases by at least a month or so.

61.    In the final days and weeks immediately prior to the national and international imposition of emergency measures, hundreds of customers patronized each CAH restaurant location, resulting in thousands of potential exposures.

62.    More likely than not, surface contaminations occurred at CAH restaurants on or about March 11, 2020, though it may not have been known for days or weeks or until a lawsuit was brought by an employee or guest.  Consequently, closure of dining rooms may have been necessary regardless of any ensuing government orders.

63.    Moreover, all restaurant dining room closures were, and continue to be, necessary for insureds to mitigate their potential contamination, exposures, and losses.

64.    The continuous presence of coronavirus in, on, and/or within the immediate area of Plaintiff's restaurants has rendered the premises unsafe and unfit for their intended use and therefore caused physical property damage or loss under the Policy.

65.    The foregoing resulted in direct physical loss or damage to property at the named insureds' scheduled locations and/or within 1,000 feet and/or within one mile, resulting in coverage under the Policy.

66.    Plaintiff and all named insureds have suffered similar orders, restrictions, city wide contamination, and closures; and all have suffered business interruption, extra expense, employee training losses, goodwill losses from inability to operate their restaurants, consumables and inventory damage and loss, costs for chemical cleanings of production lines and equipment to remove contaminants, increased cleaning and sanitization costs, event cancellation costs including marketing and planning losses, and other covered damages.

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

**(Insurance Claim)**

67.     In early March 2020, Sullivan inquired of the agent that sold the Insurers' insurance contract, Gallagher, about available coverages in the Policy.

68.     On March 17, 2020, Sullivan informed Gallagher of the government-ordered closure of dining rooms to patrons and inquired about the communicable disease coverage or any other coverage for the COVID-19 business interruption losses all of the named insureds were experiencing.  Gallagher responded that the Policy's only potential coverage was under the communicable disease coverage part and would be limited to $250,000; no other coverages would assist.

69.     Promptly thereafter, Sullivan filed a claim under the Policy for, *inter alia*, business income loss and inventory loss, for the named insureds.

70.     On March 23, 2020, an adjuster for Insurers acknowledged receipt of Sullivan's insurance claim for business interruption losses.  The next day, Gallagher informed Sullivan that Insurers were engaging Sedgwick to assist with the investigation of Sullivan's claim.

71.     On March 30, 2020, an adjuster from Sedgwick requested additional information from Sullivan, which Sullivan provided the same afternoon.  On April 8, 2020, Sedgwick confirmed that it required no additional information from Sullivan.

72.     On April 15, 2020, Sullivan emailed Insurers and Sedgwick to inquire about the status of its claim.  Two days later, Insurers responded that their initial review indicated that there would not appear to be any coverage for Sullivan's claim.  Insurers explained that this was not their final coverage position; an "evaluation of the facts of the loss at each location as they relate to the coverage forms" was purportedly under way.

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

73.    On April 22, 2020, Sedgwick informed Sullivan that its claim under the Policy remained "open pending review and evaluation of your claim by your insurance company".

74.    On April 28, 2020, Sullivan received a letter from Insurers, indicating their purported investigation and coverage analysis was complete and Insurers' conclusion was that there was no coverage for one penny of the named insureds' losses under the Policy ("Denial Letter").

75.    Both Insurers and Sedgwick have refused to share their coverage investigation report with their insureds.

76.    The Policy covers, *inter alia*, the named insureds' losses, damage, and extra expense resulting from the virus pandemic, closures, and the like, including the business income and inventory losses named insureds suffered (and continue to suffer) from the mandated closures and stay at home orders in South Carolina and Georgia, as the Coronavirus has caused physical loss or damage to property at the scheduled locations or within the immediate area of Plaintiff's locations, in accordance with the Policy's coverage provisions.

77.    Because the virus is physically impacting public and private property, including lease and business operations, and physical spaces in cities around the world and the United States, any effort by the Insurers to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger policyholders and the public.

## FOR A FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
### (against all Defendants)

78.    Plaintiff incorporates each and every allegation set forth in this Complaint as if fully set forth in this section.

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

79.     The Policy is a valid and binding indemnity contract between Insurers and Sullivan and each named insured.

80.     Sullivan and each insured on the Policy has satisfied and performed all applicable terms and conditions of the Policy and fulfilled their obligations under the Policy.

81.     Insurers failed to honor their duties and obligations under the Policy with their named insureds, and to negotiate the claim and compensate the named insureds for their covered losses. These failures constitute a breach of contract.

82.     Moreover, Sullivan reasonably expected when it purchased the Policy from Insurers that this insurance contract included coverage for all business interruption and extra expense losses except possibly extraordinary events, *e.g.*, acts of war, that are obviously, overtly, and expressly excluded or limited in the Policy.

83.     As Insurers have failed to define physical damage to property, the most favorable interpretation to the insured must be adopted.

84.     Physical damage as used in the insurance industry commonly includes loss of use of undamaged, tangible property.

85.     Moreover, there is a conflict and ambiguity in the Policy with regards to it providing all risks coverage, on the one hand, and the indecipherable and undefined loss provisions, on the other. Insurers breached their duties to their insureds and their contract of insurance by interpreting the Policy in a manner favorable to themselves instead of the insureds, who did not draft the Policy. As a result, South Carolina law and public policy requires the Policy be construed in favor of coverage.

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

86.    The foregoing breaches of contract by Insurers proximately damaged the named insureds, therefore, Sullivan, individually and on behalf of the named insureds, is entitled to an award of actual, consequential, and punitive damages, together with an award of attorney's fees.

**FOR A SECOND CAUSE OF ACTION**
**TORT OF BAD FAITH/ BREACH OF DUTY OF GOOD FAITH**
**(against all Defendants)**

87.    Plaintiff incorporates each and every allegation set forth in this Complaint as if fully set forth in this section.

88.    The Policy includes an implied covenant of good faith and fair dealing.

89.    Insurers owed a duty to fully and properly investigate the claims and indemnify their insureds for claims covered under the Policy.

90.    Insurers owed a duty of good faith and fair dealing not only in the payment of the insureds' claims arising out of the insurance contract but also in the manner in which it adjusted and processed the claim.

91.    Insurers materially breached the above described duties owed to Sullivan and each insured on the Policy, *to wit*, by: (a) wrongfully and/or unreasonably denying coverage; (b) failing to perform any meaningful investigation; (c) engaging in a one-sided and self-serving interpretation of the Policy; (d) misrepresenting Policy provisions; (e) engaging in a pre-textual "adjustment" of Sullivan's claim, looking for ways to avoid coverage rather than first trying to find coverage; (f) causing delay and/or loss of receipt of the Policy benefits; and (g) otherwise failing to act in the insureds' best interests.

92.    Insurers' bad faith is exemplified by their Denial Letter, wherein Insurers denied any Policy coverage exists for Sullivan's claim, prior to inquiring as to, *e.g.*, any events planned and cancelled; as to the consumables lost; as to the increased sanitization costs, among a host of other

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

damages suffered by the named insureds.  Instead, Insurers attempted to shift their duty to investigate to the insureds in the Denial Letter.

93.     Insurers' refusal to properly investigate Sullivan's claim and indemnify their insureds for covered losses constitutes bad faith conduct which proximately damaged the insureds.

94.     Insurers knew or should have known of the grievous damages and extraordinary harm that would be caused by breach of their duty of good faith and their wrongful denial of coverage.

95.      Sullivan is entitled to actual and compensatory damages for, *inter alia*, Insurers' bad faith conduct. As Insurers' breach of duty of good faith was reckless, malicious, and/or grossly negligent, Sullivan is also entitled to an award of punitive damages.

### FOR A THIRD CAUSE OF ACTION
### DECLARATORY RELIEF
### (against all Defendants)

96.     Plaintiff incorporates each and every allegation set forth in this Complaint as if fully set forth in this  section.

97.     In the alternative, a declaratory judgment determining that there is coverage provided under the Policy will prevent Plaintiff from being left without vital coverage acquired to ensure the survival of its businesses due to the shutdown caused by the virus' presence and the civil authorities' necessary response.

98.     Under the Uniform Declaratory Judgments Act, this Court may declare rights, status, and other legal relations whether or not further relief is or could be claimed.  S.C. Code Ann. §§ 15-53-10 *et seq*.

99.     An actual, present, and justiciable controversy has arisen between the parties to the insurance contract at issue.

100.   Sullivan seeks a determination from the Court finding that coverage under the Policy is available for it and each insureds' losses incurred in connection with the above business interruption.

WHEREFORE, Plaintiff demands a trial by jury and prays for an award of actual, incidental and consequential damages; statutory or punitive damages; reasonable attorneys' fees; costs of suit; and prejudgment interest. Alternatively, Plaintiff prays for issuance of a declaratory judgment in its favor.  In addition, Plaintiff prays for such further relief as the Court deems just and proper at law or in equity.

*/s/Justin O'Toole Lucey*
Justin O' Toole Lucey
Sohayla R. Townes
JUSTIN O'TOOLE LUCEY, PA
415 Mill Street
Mt. Pleasant, South Carolina 29464
(843) 849-8400
jlucey@lucey-law.com
stownes@lucey-law.com

*Attorneys for Plaintiff*

May 8, 2020
Mount Pleasant, SC

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283



Fireman's Fund Insurance Company

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283

Policy No: ████████8190
Named Insured: Sullivan Management LLC

## Named Insured Schedule

| Named Insured | Legal Entity |
|---|---|
| Sullivan Management LLC | Limited Liability Company |
| Vista Partners, LLC | Limited Liability Company |
| CAH Harbison, LLC | Limited Liability Company |
| Killeen CAH LLC | Limited Liability Company |
| CAH Summeville LLC | Limited Liability Company |
| Carolina Ale House Operating Company LLC | Limited Liability Company |
| CAHOC 2, LLC | Limited Liability Company |
| CAHOC 3, LLC | Limited Liability Company |
| CAHOC 4, LLC | Limited Liability Company |
| CAHOC 5, LLC | Limited Liability Company |
| CAHOC 6, LLC | Limited Liability Company |
| CAHOC 7, LLC | Limited Liability Company |
| Texas Development Fund I, LLC | Limited Liability Company |
| SULOT, LLC | Limited Liability Company |
| CAHOC 8, LLC | Limited Liability Company |
| CAHOC 9, LLC | Limited Liability Company |
| SUMLOT 2, LLC | Limited Liability Company |
| CAHOC 10, LLC | Limited Liability Company |

Business or Operations of the Named Insured: Restaurant Management

## Location Schedule

| Location | Address | City | County | State | Zip Code | Description |
|---|---|---|---|---|---|---|
| 1 | 277 Columbiana Dr | Columbia | Lexington | SC | 29212 | 1 |
| 2 | 708 Lady St | Columbia | Richland | SC | 29201 | 2 |
| 3 | 113 S Main St | Greenville | Greenville | SC | 29601 | 3 |
| 4 | 203 Robert C Daniel Jr Pkwy | Augusta | Richmond | GA | 30909 | 4 |
| 5 | 1115 Woodruff Rd | Greenville | Greenville | SC | 29607 | 5 |
| 6 | 3124 E Central Texas Expy | Killeen | Bell | TX | 76543 | 6 |
| 7 | 191 Sigma Dr | Summerville | Berkeley | SC | 29486 | 7 |
| 8 | 145 Calhoun St | Charleston | Charleston | SC | 29401 | 8 |
| 9 | 2915 Hollywood Dr | Myrtle Beach | Horry | SC | 29577 | 9 |
| 10 | 1342 Broadcloth St | Fort Mill | YORK | SC | 29715 | 10 |

Copyright © 2016 Allianz Global Risks US Insurance Company. All rights reserved.

CD 2 of 5

**Allianz** ⑪

Fireman's Fund Insurance Company

Policy No: ████8190
Named Insured: Sullivan Management LLC

## Location Schedule, *Continued*

| Location | Address | City | County | State | Zip Code | Description |
|---|---|---|---|---|---|---|
| 11 | 101 Sigma Dr | Summerville | Berkeley | SC | 29486 | 11 |
| 12 | Corner of Rose & Sigma drive | Summerville | DORCHESTER | SC | 29483 | 12 |
| 13 | 710 Lady St | Columbia | Richland | SC | 29201 | 13 |

Copyright © 2016 Allianz Global Risks US Insurance Company. All rights reserved.

ELECTRONICALLY FILED - 2020 May 08 1:45 PM - RICHLAND - COMMON PLEAS - CASE#2020CP4002283