

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| SULLIVAN MANAGEMENT, LLC, § | |
| Plaintiff, § | |
| § | |
| vs. § | CIVIL ACTION NO.3:20-2275-MGL |
| § | |
| § | |
| FIREMAN'S FUND INSURANCE COMPANY § | |
| and ALLIANZ GLOBAL RISKS US § | |
| INSURANCE COMPANY § | |
| Defendants. § | |
| § | |

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTION TO DISMISS**
**FOR FAILURE TO STATE A CLAIM**

### I.  INTRODUCTION

Plaintiff Sullivan Management, LLC, (Sullivan) brought this action against Defendants Fireman's Fund Insurance Company and Allianz Global Risks US Insurance Company (AGR) (collectively, Defendants) in the Richland County Court of Common Pleas.  Defendants subsequently removed the lawsuit to this Court.

This action involves a property insurance coverage dispute between Sullivan and Defendants. Sullivan brings claims for breach of contract, bad faith/breach of duty of good faith, and declaratory judgment in favor of coverage and a determination Defendants' denial of coverage was a breach of contract.  The Court has jurisdiction over the matter in accordance with 28 U.S.C. § 1332.

Pending before the Court is Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss Sullivan's complaint for failure to state a claim upon which relief can be granted, or, in the alternative, to dismiss the complaint as to AGR as an improper defendant.

Having carefully considered the motion, the response, the reply, the sur-reply, the record, and the applicable law, the Court will grant Defendants' motion.

## II.     FACTUAL AND PROCEDURAL HISTORY

Sullivan operates several Carolina Ale House establishments in South Carolina and Georgia. This case concerns the financial losses it suffered as a result of the presence of COVID-19 in its restaurants and the accompanying government restrictions imposed as a result of the virus, including prohibitions of on-site consumption of food and beverages at restaurants and stay-at-home orders.

Sullivan sought coverage from Defendants for its loss of income, but Defendants denied the claim for failure to trigger coverage. As the Court has already noted, Sullivan filed its lawsuit in state court, which Defendants removed to this Court.

Defendants subsequently filed a motion to dismiss, and then an amended motion to dismiss, which the parties fully briefed. Given the lack of any controlling state law on the meaning of the term "direct physical loss or damage," which was a primary disagreement between the parties, the Court certified the following question to the South Carolina Supreme Court:

> Does the presence of COVID-19 in or near Sullivan's properties, and/or related governmental orders, which allegedly hinder or destroy the fitness, habitability or functionality of property, constitute "direct physical loss or damage" or does "direct physical loss or damage" require some permanent dispossession of the property or physical alteration to the property?

*Sullivan Mngt., LLC v. Fireman's Fund Ins. Co.*, 879 S.E.2d 742, 743 (S.C. 2022).

According to the court, "[t]he answer to this question is no because the presence of COVID-19 and corresponding government orders prohibiting indoor dining do not fall within the policy's trigger language of 'direct physical loss or damage.'" *Id*.

Thereafter, Defendants filed this motion to dismiss, Sullivan filed a response in opposition, and Defendants filed a reply in support.  Sullivan then filed a sur-reply.

The Court, having been fully briefed on the relevant matters, is now prepared to adjudicate Defendants' motion.

### III.    STANDARD OF REVIEW

A party may move to dismiss a complaint based on its "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).  "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint[.]" *Edwards v. City of Goldsboro*, 173 F.3d 231, 243 (4th Cir. 1999).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must have "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (explaining in the context of pleading patent infringement, the complaint must put the defendant "on notice of what activity is being accused of infringement." (internal alterations omitted)).

In considering a motion to dismiss for failure to state a claim, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  But, the Court need not "accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards*, 178 F.3d at 243.

3

**IV.     DISCUSSION AND ANALYSIS**

Defendants make several arguments in their motion to dismiss as to why they think the Court should dismiss Sullivant's insurance claim under the different coverage provisions in the Policy. But, Sullivan addresses only one of those contentions in its response: whether the Court should dismiss its loss avoidance coverage claim. Consequently, Sullivan has waived any arguments it might have as to Defendants' other coverage arguments. *See Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 n.* (4th Cir. 2014) (noting that failure to present legal arguments waives the argument).

The Court will thus decide the questions of dismissal of Sullivan's claim for loss avoidance coverage, dismissal of Sullivan's bad faith claim, and whether it should dismiss the complaint against AGR as an improper defendant.

   *A.     Whether the Court should dismiss Sullivan's loss avoidance coverage claim*

According to Defendants, "loss avoidance coverage is not available here because there was no potential covered loss or damage that is actually and imminently threatening Property Insured." Defendants' Motion at 22. Defendants maintain that "[t]he Supreme Court has already held that neither the virus nor the government orders issued to control its spread causes direct physical loss or damage[;] [t]hus, Sullivan had no covered loss or damage to mitigate." *Id.* at 22 (internal quotation marks omitted). Defendants also state that "Sullivan did not allege that it performed any of the listed activities" in the policy in its attempt to avoid any loss. *Id.*.

Sullivan, however, contends that "no actual loss or damage is required for the 'Loss Avoidance or Mitigation Coverage' provided by the policy:" Sullivan's Response at 7. Sullivan states that "[a]s the policy provides coverage for mitigation of potential covered losses, by its own terms, there is coverage even if the threatened loss does not materialize, whether because of the

4

mitigation efforts or other factors." *Id*. Sullivan also maintains that '[n]othing in the loss avoidance provision requires insureds to perform one of the particular activities listed; the activities are exemplars, not policy requirements." *Id*. Sullivan further asserts that "[t]he . . . [P]olicy does not require an insured to know whether a covered loss is in fact being avoided to qualify for Loss Avoidance or Mitigation Coverage." *Id*.

"The insured bears the burden of proving its claim falls within the policy's coverage." *Jericho State Capital Corp. of Fla. v. Chicago Title Ins. Company*, 848 S.E.2d 572, 576 (S.C. App. 2020).

\     The loss avoidance coverage portion of the insurance policy at issue (the Policy, or Policy) states as follows:

> a. We will pay the necessary expense you incur to protect, avoid, or significantly mitigate potential covered loss or damage that is actually and imminently threatening Property Insured, including:
>
> (1) Removal of ice or snow from the roof or balconies of business real property that has accumulated during and due to a storm;
> (2) Pumping of standing water away from business real property that has accumulated during and due to a flood, hurricane, named storm, or storm;
> (3) Application of fire retardant foam or similar fire suppression or extinguishing material to business real property as protection against an approaching fire; and
> (4)  Boarding up or sandbagging of doors, windows, or other external openings in business real property as protection against an approaching flood, hurricane, named storm, or storm. However, we will not pay for any loss, damage, or expense caused by or resulting from such loss prevention actions.

Policy ¶ V(D)(9) (emphasis omitted).

The Court need not tarry here long. First, the Court agrees with Sullivan that the list of expenses the policy will cover is exemplary, not exhaustive. Second, the Court has little trouble concluding the loss avoidance coverage provision covers loss avoidance efforts related to a "covered loss or damage," *Id*. ¶ V(D)(9)(a), which the South Carolina Supreme Court has determined COVID-19 is not.

Put a different way, the loss avoidance coverage here covers those things done to avoid physical loss or damage to Sullivan's property. But, COVID-19 "impacts human health and human behavior, not physical structures." *Sullivan Management, LLC,* 879 S.E.2d at 745 (citation omitted) (internal quotation marks omitted). As such, those things Sullivan did in reaction to COVID-19 fail to trigger loss avoidance coverage here because they did nothing "to protect, avoid, or significantly mitigate [any] potential[,]" Policy ¶ V(D)(9)(a), physical loss or damage to Sullivan's property.

Thus, Sullivan is unable to establish that "its claim [for loss avoidance coverage] falls within the policy's coverage." *Jericho State Capital Corp. of Fla.*, 848 S.E.2d at 576. As such, its claim for loss avoidance coverage will be dismissed.

### B.     *Whether the Court should dismiss Sullivan's bad faith/breach of duty of good faith claim*

Second, Defendants contend "Sullivan's bad faith claim fails because there is no coverage or, alternatively, because the denial of coverage was objectively reasonable." Defendants' Motion to Dismiss at 23 (emphasis omitted). According to Sullivan, however, Defendants' "denial of coverage was not objectively reasonable[,] [and thus bad faith,] given the lack of scientific development of COVID-19 at the time coverage was denied." Sullivan's Response at 9 (emphasis omitted).

Sullivan argues its bad faith claim is also based on "the [un]reasonableness of [Defendants'] claim investigation; their claims handling; and what presumptions they employed in concluding that

there is no coverage, rather than undertaking a thorough evaluation of the loss their insured claimed." Sullivan's Response at 9.

### 1. Whether Sullivan's bad faith claim that Defendants' denial of coverage was unreasonable should be dismissed

As per well settled South Carolina law,

> To establish a bad faith claim against an insurance company, the plaintiff must show: (1) the existence of a mutually binding contract of insurance between plaintiff and defendant; (2) an insurer's refusal to provide benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action and breach of an implied covenant of good faith and fair dealing arising out of the contract; and (4) causing damage to the insured.

*Peterson v. West American Ins. Co.*, 518 S.E.2d 608, 614–15 (S.C. Ct. App.1999). The elements of an action for breach of the duty of good faith and fair dealing in an insurance contract are the same. *See Gaskins v. Southern Farm Bureau Cas. Ins. Co.*, 541 S.E.2d 269, 272 (S.C. Ct. App. 2000) (setting forth the same elements).

There appears to be no dispute that the first two elements of *Peterson* are satisfied: "(1) the existence of a mutually binding contract of insurance between plaintiff and defendant; [and] (2) an insurer's refusal to provide benefits due under the contract[.]" *Peterson*, 518 S.E.2d at 615. So, what remains for the Court to determine is whether Defendants' denial of Sullivan's insurance claim "(3) result[ed] from [Defendants'] bad faith or unreasonable action and breach of an implied covenant of good faith and fair dealing arising out of the contract; and (4) caus[ed] damage to [Sullivan]." *Id*.

"An insured may recover damages for a bad faith denial of coverage if he or she proves there was no reasonable basis to support the insurer's decision to deny benefits under a mutually binding insurance contract." *Cock–N–Bull Steak House, Inc. v. Generali Ins. Co.*, 466 S.E.2d 727, 730 (S.C. 1996) (citation omitted) (internal quotation marks omitted). "Whether an insurance company is

liable for bad faith must be judged by the evidence before it at the time it denied the claim or[,] if the insurance company did not specifically deny the claim[,] by the evidence it had before it at the time the suit was filed." *Howard v. State Farm Mut. Auto. Ins. Co.*, 450 S.E.2d 582, 584, (S.C. 1994).

So, the Court must determine whether there was a reasonable basis to support Defendants' decision to deny Sullivan's insurance claim. Again, Defendants contend it was reasonable inasmuch as there was no coverage available to Sullivan.

Sullivan maintains, however, that Defendants' denial of coverage was unreasonable at the time it denied coverage because "[t]he science behind COVID-19 was in its infancy at the time of denial—just 30 days after the start of the pandemic. In the very beginning, even the world's best scientists were uncertain of how serious COVID was, how it spread, how fast it spread, what measures prevented infection, etc." Sullivan's Response at 10. Sullivan also contends "it would be error to dismiss [its] bad faith claim based on today's knowledge and recent opinions." Sullivan's Sur-reply at 3.

Sullivan further notes that Defendants "reference pre-COVID South Carolina law in support of its denial of coverage. However, given what little information was known surrounding COVID at the time, comparison to case law before any scientific development cannot be deemed an objectively reasonable basis for denial." *Id.* (citation omitted) (internal quotation marks omitted).

As per the Oxford English Dictionary, the term unreasonable is defined as follows: "Of an idea, attitude, action, etc.: not guided by, or based upon, reason, good sense, or sound judgement; illogical." https://www.oed.com/search/dictionary/?scope=Entries&q=unreasonable (last accessed July 31, 2023).

The South Carolina Supreme Court decision, which effectively agreed with Defendants that there was no coverage, of course, came after Defendants denied coverage. And, although

"[e]vidence that arises after the denial of the claim is not relevant to the propriety of the conduct of the insurer at the time of its refusal[,]" *Howard*, 450 S.E.2d at 584, this judicial decision is not "evidence." It is instead a legal opinion that confirms the propriety and the reasonableness of Defendants' decision to deny coverage based on the "physical loss or damage" question.

That said, to state the obvious, Defendants' decision to deny coverage was reasonable before the South Carolina Supreme Court agreed that it was.

Regarding Sullivan's COVID-19 science-related arguments, as Defendants stated, "none of that is relevant." Defendants' Reply at 10. The science behind COVID-19 was immaterial in the South Carolina Supreme Court's decision inasmuch as that court neglected to consider science, but was instead "limit[ed] . . . to ascertaining the intent of the parties based on the language used in the policy." *Sullivan Management, LLC,* 879 S.E.2d at 743. And, in doing so, the Court stated that, "[b]ecause neither the presence of the coronavirus nor the government order prohibiting indoor dining constitutes 'direct physical loss or damage,' the policy's triggering language is not met." *Id*. at 746.

Further, contrary to any suggestion by Sullivan otherwise, COVID-19 did nothing to alter pre-COVID South Carolina law.

Consequently, the Court is unable to say that Defendants' decision to deny Sullivan's insurance coverage claim was "not guided by, or based upon, reason, good sense, or sound judgement[.]" https://www.oed.com/search/dictionary/?scope=Entries&q=unreasonable (last accessed July 31, 2023). As such, this claim will also be dismissed. No plausible assessment of the record and the applicable law can lead to a different result.

> **2..    *Whether Sullivan's bad faith claim that Defendants' denial of its insurance claim entailed any unreasonable action and a breach of the implied covenant of good faith and fair dealing should be dismissed***

9

Defendants contend that this claim must fail because of Sullivan's lack of consequential damages. They neglect to offer any specific argument as to the merits of Sullivan's conclusory allegations concerning "the [un]reasonableness of [Defendants'] claim investigation; their claims handling; and what presumptions they employed in concluding that there is no coverage, rather than undertaking a thorough evaluation of the loss their insured claimed." Sullivan's Response at 9. "Certainly," according to Sullivan, "Defendants' refusal to share with its insured their investigatory basis for denying the claim puts their good faith into issue." *Id*.

The breach of an express contractual provision is not prerequisite to bringing an action for breach of implied covenant of good faith and fair dealing for consequential damages allegedly suffered as a result of the insurer's bad faith. *Tadlock Painting Co. v. Maryland Cas. Co*., 473 S.E.2d 52, 55 (S.C. 1996). Instead, "the insured . . . is entitled to receive the additional security of knowing that [it] will be dealt with fairly and in good faith. That security comes not from the express contractual terms, but from the implied covenant of good faith and fair dealing." *Id.* at 54 (citation omitted) (internal quotation marks omitted) (emphasis omitted).

The Court will dismiss this claim for three reasons. First, Sullivan's conclusory allegations of bad faith listed above, without any factual allegations to support them, are insufficient to state a claim of bad faith. Second, it appears from the papers before the Court that Defendants' decision to deny Sullivan's insurance claim was based solely on its reading and interpretation of the Policy. As such, its determination was language based, not fact based. Accordingly, unlike in many insurance coverage disputes, the reasonableness of Defendants' claim investigation, handling; presumptions, and evaluation of the loss, are of little consequence. Their denial of Sullivan's claim was based on their interpretation of the language of the Policy, and had little to nothing to do with their investigation of the claim, and all of the rest.

And third, as to Defendants' consequential damages argument, Defendants agree with "the proposition that a bad faith claim sounds in tort and, in certain circumstances, can survive even in the absence of coverage." Defendants Reply at 10. But, they insist that "such a claim still requires the existence of consequential damages caused by the insurer's alleged bad faith. Here, Sullivan has not plausibly alleged any such damages. . . ." *Id*. Sullivan fails to address this argument in its sur-reply.

Defendants are correct, to satisfy the damages element of a bad faith claim, the plaintiff must demonstrate that it suffered consequential damages due to the insurer's alleged bad faith actions. *Tadlock Painting Co.,* 473 S.E.2d at 55.        .

Defendants are also correct in pointing out that Sullivan has failed to establish that it suffered any consequential damages as a result of Defendants' alleged "bad faith or unreasonable action . . . in processing [Sullivan's] claim under their mutually binding insurance contract," *Id*. at 54 (emphasis omitted). This failure is also fatal to this bad faith claim.

Accordingly, in the Court's view, Sullivan's bad faith claim that Defendants' denial of its insurance claim entailed any unreasonable action and a breach of the implied covenant of good faith and fair dealing will be dismissed, as well.

### C.     *Whether the Court should dismiss Sullivan's claims against AGR*

Third, Defendants maintain "AGR US has nothing to do with this lawsuit. Sullivan's complaint does not plausibly allege any basis for having sued AGR US." Defendants' Motion to Dismiss at 23 (emphasis omitted). Sullivan, on the other hand, states, among other things, that "[t]he face of the policy indicates that it is issued by both Defendants." Sullivan's Response at 10.

In light of the Court's decision to dismiss Sullivan's loss avoidance coverage and bad faith claims against both Defendants, there is no reason for the Court to decide this issue. *See Karsten v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc*., 36 F.3d 8, 11 (4th Cir. 1994) ("If the first

11

reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest dicta.").

## V.    CONCLUSION

Therefore, based on the foregoing discussion and analysis, it is the judgment of this Court Defendants' motion to dismiss Sullivan's complaint for failure to state a claim is **GRANTED**.

**IT IS SO ORDERED**.

Signed this 2nd day of August, 2023, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
